# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EDWARD B. BURGESS,<br><br>                 Plaintiff,<br>v.<br><br>REBECCA LENZ, SHANE BRUNNER, JEAN LUTSEY, MARY SAUVEY, KATHY LEMENS, MARY ALSTEEN, and ANA BOATWRIGHT,<br><br>                 Defendants. | Case No. 16-CV-1147-JPS<br><br>**ORDER** |

**1.    INTRODUCTION**

Plaintiff Edward B. Burgess, a prisoner who is representing himself, brought this action alleging that Defendants, various medical and correctional employees of Green Bay Correctional Institution ("GBCI") and the Wisconsin Department of Corrections, violated Plaintiff's Eighth Amendment right to adequate healthcare. *See* (Docket #11). After this action was reassigned to this branch of the Court from Magistrate Judge William E. Duffin, to whom the case was originally assigned, Defendants moved for summary judgment. (Docket #31). That motion is fully briefed, *see* (Docket #31–40 and #44–46), and for the reasons explained below, it must be granted.

**2.    STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th

Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

3. BACKGROUND

   3.1 Plaintiff's Failure to Dispute the Material Facts

The relevant facts are undisputed because Plaintiff failed to dispute them. In the Court's scheduling order, entered January 24, 2017, Plaintiff was warned about the requirements for opposing a motion for summary judgment. (Docket #20 at 3). Accompanying that order were copies of Federal Rule of Civil Procedure 56 and Civil Local Rule 56, both of which describe in detail the form and contents of a proper summary judgment submission. In Defendants' motion for summary judgment, they too warned Plaintiff about the requirements for his response as set forth in Federal and Local Rules 56. (Docket #31). He was provided with additional copies of those Rules along with Defendants' motion. *Id.* at 3–13. In connection with their motion, Defendants filed a supporting statement of material facts that complied with the applicable procedural rules. (Docket #33). It contained short, numbered paragraphs concisely stating those facts which Defendants proposed to be beyond dispute, with supporting citations to the attached evidentiary materials. *See id.*

Plaintiff did not respond to Defendants' statement of facts and did not offer his own proposed statement of facts. His only submissions were a two-page response brief, a two-page affidavit, and four pages of exhibits.

(Docket #44 and #45).[1] None of these documents contains even a facial attempt to meet the requirements of Federal and Local Rules 56 for disputing factual assertions. Despite being twice warned of the strictures of the summary judgment procedure, Plaintiff ignored those rules by failing to properly dispute Defendants' proffered facts with citations to relevant, admissible evidence. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Though the Court is required to liberally construe a *pro se* plaintiff's filings, it cannot act as his lawyer, and it cannot delve through the record to find favorable evidence for him. Thus, the Court will, unless otherwise stated, deem Defendants' facts undisputed for purposes of deciding their motion for summary judgment. *See* Fed. R. Civ. P. 56(e); Civ. L. R. 56(b)(4); *Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against *pro se* litigants).

### 3.2 Relevant Facts

In the absence of any dispute, the facts specific to each Defendant's alleged liability will be discussed in the Court's legal analysis as appropriate. For now, the Court provides a general overview of the circumstances of Plaintiff's claim. All factual discussion is drawn from Defendants' statement of proposed facts. (Docket #33).

Plaintiff has had a history of plantar fasciitis—foot pain—going back more than twenty years. In 2013, while he was incarcerated at Fox Lake Correctional Institution, Plaintiff was prescribed orthotic inserts for his shoes. He was never prescribed any special, medically necessary shoes for

---

[1] Plaintiff's brief implies that he prepared his own statement of proposed undisputed facts, (Docket #44 at 1), but nothing like that was ever filed, either at the time his responsive materials were due, or in the months since then.

the treatment of his condition. Rather, he was provided athletic shoes which had sufficient depth to accommodate the inserts.

Plaintiff was transferred to GBCI in June 2015. At that time, Plaintiff had permission to wear the custom orthotics. He was also permitted to wear a number of his personal, non-state-issued shoes to any health services appointments for treating his foot pain. When he was transferred, Plaintiff was using high top tennis shoes to hold the orthotics. GBCI inmates are allowed two pairs of shoes: one state-issued leather work boot, and another pair of personal shoes the inmate could purchase from a catalogue. The Health Services Unit ("HSU") would also provide inmates with custom orthopedic shoes when it was deemed medically necessary.

Plaintiff's foot and shoe complaints began almost immediately. He met with a Nurse Utter on June 15 and asked that he be allowed to purchase shoes with more resistant soles that would last longer. The nurse scheduled him for an appointment with a physician. Defendant Dr. Mary Sauvey ("Sauvey") saw Plaintiff on July 20. At that time, Plaintiff requested new orthotics, and so Sauvey contacted outside orthopedic specialists. In August, the specialists recommended that Plaintiff be provided a diabetic shoe with orthotics. Diabetic shoes have additional support to prevent foot deformities that can develop in those with diabetes. Plaintiff was sized for such a shoe and a pair was ordered.

When the shoes arrived, Plaintiff said they were too big and refused to wear them. He instead demanded a pair of high tops. Sauvey replied that high tops were not medically necessary. Plaintiff and Sauvey met again in September to discuss his foot issues. Plaintiff insisted that he preferred his high tops, but Sauvey reiterated that they were not medically necessary, as the shoes themselves did nothing to treat Plaintiff's pain. Sauvey again

recommended diabetic shoes. She also recommended a program of other pain treatments, including injections, physical therapy, and medication. Plaintiff asked that he be provided a tennis ball to roll on his feet, which Sauvey permitted. Plaintiff continued to refuse to wear the diabetic shoes, as well as the orthotics Sauvey ordered, so Sauvey cancelled Plaintiff's future appointments with the outside orthopedic specialists.

In January 2016, Plaintiff was briefly transferred to another institution, where he was allowed to continue his various foot treatments. When he returned to GBCI in February, Sauvey discontinued the orders that permitted Plaintiff to wear his personal shoes and orthotics. She did so because those items were either not medically necessary, or prohibited by security concerns, or both. Sauvey set an appointment to see Plaintiff, hoping to convince him to buy a pair of tennis shoes that he liked, as opposed to the diabetic shoes he clearly disliked. Sauvey met with Plaintiff on February 11. This appointment stemmed in part from Plaintiff's many requests to replace what he believed were his medically necessary high tops and custom orthotics. Sauvey examined the high tops and found that they were in fine condition, and so denied the request.

The pair met again on March 15. Plaintiff claimed that the new orthotics did not fit in his high tops. He also wanted to have surgery for his foot condition. He refused the injections that Sauvey had previously ordered. Sauvey ordered new diabetic shoes and gel insoles for Plaintiff. She believed that it was important for Plaintiff, diagnosed as diabetic since January 2016, to have such shoes. Sauvey thought the gel insoles might give Plaintiff more cushion for his feet.

On March 21, Plaintiff was measured for the new diabetic shoes. On March 28, Sauvey ran an EMG test on Plaintiff's feet to determine the source

of his pain, but the results were normal. When the shoes were ready on April 5, Plaintiff again refused to accept them in exchange for his current state-issued shoes. The next day, Sauvey discontinued the diabetic shoes in light of his repeated refusal to take them. She continued the order for the gel insoles, which could fit in any shoe. In September 2016, Plaintiff was transferred out of GBCI.

4.   ANALYSIS

As noted above, Plaintiff was allowed to proceed on a single claim against all Defendants for an alleged violation of his Eighth Amendment rights. Plaintiff maintains that each Defendant knew his foot pain was being inadequately addressed and did nothing to correct this.

Prisoners are entitled to a minimal level of healthcare while in custody. *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016). The Eighth Amendment is violated when the prisoner shows that he "suffered from an objectively serious medical condition," and that "the individual defendant was deliberately indifferent to that condition." *Id.* at 728. As the Court noted at screening, the *Gayton* case neatly summarizes the claim:

> [T]he plaintiff must show that: (1) [he] had an objectively serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to treating h[im]; and (3) this indifference caused h[im] some injury. An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.
>
> With regard to the deliberate indifference prong, the plaintiff must show that the official acted with the requisite culpable state of mind. This inquiry has two components. The

official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk. Evidence that the official acted negligently is insufficient to prove deliberate indifference. Rather, deliberate indifference is simply a synonym for intentional or reckless conduct, and that reckless describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred. Simply put, an official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Even if a defendant recognizes the substantial risk, he is free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted.

*Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (citations and quotations omitted). In sum, "deliberate indifference means actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." *Ayoubi v. Dart*, No. 17-1561, 2018 WL 671152, at *2 (7th Cir. Feb. 2, 2018).[2]

The Court will address each Defendant in turn, beginning with Sauvey. Far from ignoring Plaintiff, Sauvey engaged with him extensively to address his foot pain. Plaintiff himself exacerbated his condition by refusing the treatments she proposed. Plaintiff would not wear the diabetic shoes or the new orthotics. His insistence on using his high tops was based on nothing more than his own belief about their efficacy, unsupported and indeed contradicted by Sauvey's judgment and that of outside orthopedic specialists. *See Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015) (prison medical staff can exhibit deliberate indifference when they do not follow a specialist's recommendation). Further, Plaintiff had an option to purchase

---

[2]Defendants concede, for the purposes of summary judgment, that Plaintiff's plantar fasciitis is a sufficiently serious medical condition. (Docket #32 at 11 n.1).

athletic shoes to accommodate his old orthotics but did not do so. Finally, Plaintiff was provided with medication, injections, physical therapy, and other treatment devices, such as gel insoles and a tennis ball. When viewing his care holistically, Plaintiff was provided far more than the minimal level of care the Eighth Amendment requires. Plaintiff's disagreement with that treatment cannot form the basis of a deliberate indifference claim. *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) ("[A] mere disagreement with the course of [the inmate's] medical treatment [does not constitute] an Eighth Amendment claim of deliberate indifference.") (quotations omitted).

The remaining Defendants require even less discussion. Defendant Mary Alsteen ("Alsteen") was a nurse at GBCI who responded to one of Plaintiff's HSU requests. In April 2016, Alsteen denied Plaintiff's demand for surgery and other foot treatments, as his medical file showed that he was being treated by Sauvey, and that she had not ordered surgery. Plaintiff suggests that Alsteen should have done more, but she had neither the training nor authority to overrule Sauvey's treatment decisions. Alsteen was entitled to defer to Sauvey's care plan as long as she did not "ignore obvious risks to [Plaintiff's] health." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 683 (7th Cir. 2012). Plaintiff has presented no evidence that Sauvey's care was so abhorrent that it should have been obvious to Alsteen that Sauvey was causing him harm.

Defendants Rebecca Lenz ("Lenz") and Shane Brunner ("Brunner") were GBCI correctional officers. In May 2016, Brunner confiscated Plaintiff's high tops because he was being placed in temporary lockup in the restrictive housing unit. Plaintiff had no medical order to wear his high tops, and so Brunner could not let Plaintiff keep them. Brunner issued Plaintiff a conduct report for having the shoes, which were considered

contraband. Lenz was the hearing officer for the conduct report. Without a valid medical order for the high tops, Lenz had no choice but to find Plaintiff guilty of possessing contraband.

Brunner and Lenz were not deliberately indifferent to Plaintiff's foot pain. Plaintiff never told them that his high tops were medically necessary. That would have been untrue even had he said it. Further, their actions were circumscribed by prison rules. Without a valid medical order, neither could allow Plaintiff to keep the shoes. As non-medical correctional staff, who are "not responsible for administering medical care to [prisoners]," they were "entitled to defer to the judgment of [prison] health professionals so long as [they] did not ignore [the prisoner]." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). The officers were clearly entitled to rely on GBCI's medical professionals, as they had no role at all in Plaintiff's medical care.

Plaintiff also levels criticism at Defendants Jean Lutsey ("Lutsey"), the HSU manager, and Kathy Lemens ("Lemens"), another GBCI nurse. In June, Lemens addressed an HSU request in which Plaintiff complained that his high tops had been confiscated. Lemens reviewed Plaintiff's file and found no order for the high tops. She told Plaintiff that he would need to see a physician to address the concern with his high tops. Later that month, Lutsey responded to additional complaints from Plaintiff about his high tops. She gave Plaintiff the same answer as Lemens; he had no present order indicating that the shoes were medically necessary. Like Alsteen, Lutsey and Lemens were entitled to rely on Sauvey's ongoing care and could not override her treatment decisions. Also like Alsteen, there is no evidence that Lutsey and Lemens knew that Plaintiff was being blatantly mistreated. *Rice*, 675 F.3d at 683.

Defendant Ana Boatwright ("Boatwright"), the final defendant, was, among other things, a corrections complaint examiner. In this capacity, she reviewed inmates' appeals from denials of their formal written grievances. One such appeal she reviewed was Plaintiff's. He filed a grievance claiming that Sauvey's medical decisions were improper, and Boatwright recommended denial of his appeal. The Seventh Circuit holds that complaint examiners like Boatwright cannot be held to have acted with deliberate indifference so long as they do their jobs and do not "routinely send each grievance to the shredder without reading it." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). There is no evidence of such misconduct here. Boatwright investigated Plaintiff's appeal and determined that he was receiving substantial medical treatment. Like other non-medical correctional staff, she was entitled to defer to the medical providers' judgment. *King*, 680 F.3d at 1018.

The reader may wonder why the Court has said nothing about Plaintiff's contentions up to this point. This is because his brief contains only one paragraph with any meaningful argument. (Docket #44 at 2). The statements therein do not aid his claim, however, but rather confirm that summary judgment is appropriate. Plaintiff says that he "is not disputing that he was never provided any medical care at all." *Id.* Rather, he asserts that his "medical shoes that helped mitigate the pain . . . were unduly confiscated for no reason." *Id.* Plaintiff contends that he "made incessant attempts to try to remedy the issue by giving the [Defendants] ample opportunity to provide [him] with the adequate shoes." *Id.* Finally, Plaintiff argues that his diabetes diagnosis was "illegal" and was used to confiscate his shoes. *Id.*

Some of Plaintiff's statements are not supported by the facts. None of his shoes, other than the diabetic shoes, were ever deemed medically necessary. Further, Sauvey's concerns about Plaintiff's diabetes were based on her medical judgment, against which Plaintiff has no contrary medical evidence. More importantly, Plaintiff's concerns reveal that he simply disagrees with the course of treatment ordered by Sauvey. This cannot support a claim for deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) ("Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference."); *King*, 680 F.3d at 1019 ("In evaluating the evidence, we must remain sensitive to the line between malpractice and treatment that is so far out of bounds that it was blatantly inappropriate or not even based on medical judgment.").

5. **CONCLUSION**

On the undisputed facts presented, summary judgment is appropriate in favor of each Defendant. The Court must, therefore, grant Defendants' motion and dismiss this action with prejudice.[3]

---

[3]One final matter remains. As the Court noted at the outset of this Order, this case was originally assigned to a magistrate judge, and it was reassigned to this branch of the Court after Defendants refused to consent to magistrate judge jurisdiction. *See* (Docket #15). Prior to reassignment, the magistrate judge entered a screening order dismissing seven defendants named in Plaintiff's complaint. (Docket #11).

Until all parties have an opportunity to consent to magistrate judge jurisdiction, a magistrate judge presiding over a case may not enter an order that disposes of an entire case. *See Coleman v. Labor & Indus. Review Comm'n*, 860 F.3d 461, 475 (7th Cir. 2017). "Rather than entering final judgments, they must issue proposed findings of fact and conclusions of law to be reviewed *de novo* by the district court." *Id.* (quotation omitted). District courts in this circuit have interpreted *Coleman* to apply not only to a magistrate's proposed dismissal of an entire case, but to dismissal of a single claim or defendant as well. *See, e.g., Jones v.*

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (Docket #31) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 23rd day of April, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

*Marcus,* No. 17–C–1265, 2017 WL 5032719, at *1 (E.D. Wis. Oct. 31, 2017) (considering magistrate judge's recommendation that one of the three claims in the plaintiff's complaint be dismissed).

In light of *Coleman,* and out of an abundance of caution, this Court has reviewed *de novo* the magistrate's screening order as if it were a recommendation. *See* (Docket #11). The Court concurs entirely with that order.